VETERANS OF FOREIGN WARS
POST 6477, Appellant,

v.

MISSOURI GAMING COMMISSION,
Respondent.

No. WD 68118.

Missouri Court of Appeals,
Western District.

Jan. 29, 2008.

Scott Hamblin, Jefferson City, MO, for appellant.

Jane A. Rackers, Assistant Attorney General, Jefferson City, MO, for respondent.

Before HAROLD L. LOWENSTEIN, Presiding Judge, JOSEPH M. ELLIS, Judge and THOMAS H. NEWTON, Judge.

JOSEPH M. ELLIS, Judge.

Veterans of Foreign Wars Post 6477 ("VFW Post 6477") appeals from the revocation of its bingo license by the Missouri Gaming Commission ("MGC") and the subsequent judgment of the Circuit Court of Cole County affirming the revocation. For the following reasons, the revocation is affirmed.

VFW Post 6477 has long held a bingo license granted by the MGC. Pursuant to a settlement agreement with and waiver of a disciplinary hearing before the MGC, on March 29, 2001, VFW Post 6477 had its bingo license suspended for one week, was placed on probation for two years, and paid a $2,500 fine. The settlement agreement specifically provided that "[a]s a condition of the probation, Poplar Bluff VFW Post 6477 agrees to obey Missouri laws including all regulations concerning the operation of bingo games, and it agrees that it will not have any illegal gambling machines in any building it controls."

On March 13, 2003, the Missouri Highway Patrol inspected VFW Post 6477's facilities and found four gaming machines in the bar that investigators believed to be illegal gambling devices: two Fruit Bonus 96 machines, one Cherry 96 machine, and one Super Poker machine. On June 23, 2004, the MGC filed a complaint with the Administrative Hearing Commission

("AHC"), asserting that VFW Post 6477 was subject to discipline under § 313.052(1) for violating § 572.070, which prohibits possession of a "gambling device, knowing or having reason to believe that it is to be used in the state of Missouri in the advancement of unlawful gambling activity" and for violating the provisions of the March 29, 2001 order of the MGC, which prohibits VFW Post 6477 from having illegal gambling machines in its buildings. After conducting a hearing on January 20, 2005, the AHC issued its decision finding that the machines were illegal gambling machines, that VFW Post 6477's possession of those devices violated § 572.070, and that VFW Post 6477 had violated the provisions of the MGC's order of March 29, 2001. As a result of those findings, the AHC determined that VFW Post 6477 was subject to discipline under §§ 313.052(1) and (2).

Following a disciplinary hearing, the hearing officer for the MGC issued its Findings of Fact, Conclusions of Law and Recommendation for Discipline recommending revocation of VFW Post 6477's bingo license. On March 15, 2006, the MGC issued its order adopting the findings of the hearing officer and revoking the bingo license. VFW Post 6477 timely appealed to the Circuit Court of Cole County. On January 18, 2007, the circuit court issued its Findings of Fact, Conclusions of Law and Judgment affirming the decisions of the AHC and the MGC. VFW Post 6477 brings two points on appeal challenging the findings of the AHC and the discipline imposed by the MGC.

■ On appeal, this Court reviews the decisions of the AHC and the MGC rather than the judgment of the circuit court. *See Tendai v. Missouri State Bd. Of Registration for the Healing Arts,* 161 S.W.3d 358, 365 (Mo. banc 2005). Our review is essentially "limited to determining if the administrative agency's decision is supported by substantial competent evidence based on the record as a whole, whether the decision is arbitrary, capricious or unreasonable, or whether the agency abused its discretion." *Buchheit, Inc. v. Missouri Comm'n on Human Rights,* 215 S.W.3d 268, 276 (Mo.App. W.D.2007) (internal quotation omitted). "We will not substitute our judgment for that of the Commission on factual matters, but questions of law are matters for the independent judgment of this court." *Dep't of Soc. Servs., Div. of Med. Servs. v. Senior Citizens Nursing Home Dist. of Ray County,* 224 S.W.3d 1, 6 (Mo.App. W.D.2007) (internal quotation omitted).

■ In its first point, VFW Post 6477 claims that the AHC's finding that the seized machines were illegal gambling devices is not supported by competent and substantial evidence upon the whole record. Section 572.070 provides that "[a] person commits the crime of possession of a gambling device if, with knowledge of the character thereof, he . . . places or possesses . . . (1) A slot machine; or (2) Any other gambling device, knowing or having reason to believe that it is to be used in the state of Missouri in the advancement of unlawful gambling activity." " 'Gambling device' means any device, machine, paraphernalia or equipment that is used or usable in the playing phases of any gambling activity, whether that activity consists of gambling between persons or gambling by a person with a machine." § 572.010(5).

■ "[A] person engages in 'gambling' when he stakes or risks something of value upon the outcome of a contest of chance [1]

1. " 'Contest of chance' means any contest,     game, gaming scheme or gaming device in

or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome." § 572.010(4). Thus, the statutory definitions "show that gambling includes playing games wherein 1) players stake or risk something of value, 2) chance is a material factor and 3) successful play is rewarded by 'something of value'." *Thole v. Westfall,* 682 S.W.2d 33, 36–37 (Mo.App. E.D.1984). Section 572.010(12) defines "something of value" as "any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise directly or indirectly contemplating transfer of money or property or of any interest therein or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge[.]"

VFW Post 6477 argues that the evidence did not establish that players could or would receive anything of value as a result of their play on the machines. It claims that, therefore, the record is insufficient to support the suspension of its bingo license.

Contrary to VFW Post 6477's contention, the record contains direct evidence that payouts were made for play on the machines. Sergeant Dwight Franklin of the Gaming Division of the Missouri Highway Patrol participated in the inspection of the canteen and the seizure of the machines. On cross-examination and re-direct, Sgt. Franklin testified that the canteen bartenders admitted that they made monetary payoffs to the players on the machines.[2] No evidence was presented to the contrary. Accordingly, the evidence clearly established that players would receive something of value as a result of successful play on the machines.

▮ Furthermore, the record contains an abundance of other evidence supporting the AHC's finding. Evidence as to the nature of the machine at issue related to its operation and the nature of play can provide sufficient circumstantial evidence to establish that the device is an illegal gambling device. *Id.* at 36. The machines that were seized all had multiple-coin features, they had a multiple-play option where more than one credit could be played at a time, none of the machines involved the application of skill, the games offered were casino-type games, the machines had a short time of play, they had a fixed payoff, they had multiple meters,[3] they had a "knockoff" feature where the bartenders could use a device kept behind the bar to reset the credits on the machine for each player, they had a power-interrupt circuit to avoid losing records in the event of a power outage, and they had ticket reels that would award tickets to

---

which the outcome depends in a material degree upon an element of chance, notwithstanding that the skill of the contestants may also be a factor therein[.]" § 572.010(3).

**2.** During direct examination, counsel for VFW Post 6477 objected on hearsay grounds to a question by the MGC asking whether the bartenders indicated whether there were any payouts made on the machines. The Commissioner stated, "At this point I'm going to sustain the objection." While counsel for VFW Post 6477 then declared that he was making "a standing objection," nothing in the record reflects that the Commissioner granted him a continuing objection and, when the testimony came in during cross-examination and re-direct, no relief was requested. Furthermore, no claim has been made on appeal that this testimony was improperly admitted.

**3.** Sgt. Franklin testified that the machines had multiple meters and that this feature is frequently used on illegal devices to keep track of the money put in and paid out. "Meters for recording erased points have long been deemed significant in determining whether 'free replay' machines are gambling devices." *Thole,* 682 S.W.2d at 38.

players. Sgt. Franklin opined, based upon his experience and training, that all of the machines were illegal gambling devices. In addition, Sgt. Franklin testified that right before they entered the canteen, one of the VFW officers commented, "You're not going to like what you find."

The foregoing circumstantial evidence was sufficient to support a finding that players would receive something of value for successful game play and that the machines were not merely used for entertainment purposes.[4] *See Chandler v. Hemeyer*, 49 S.W.3d 786, 793 (Mo.App. W.D.2001) (Evidence that the machines "took money to play, were games of chance, rewarded the player with hundreds or thousands of credits, and had an internal accounting system that kept track of credits for payoff purposes," and that the establishment had a device that cleared the points from the machine serves to prove that a machine is an illegal gambling device.); *see also Thole*, 682 S.W.2d at 35–36.

In short, the AHC's finding that the machines were illegal gambling devices is supported by competent and substantial evidence on the record as a whole. Point denied.

■ In its second point, VFW Post 6477 contends that the MGC abused its discretion in revoking the bingo license without adequately considering lesser sanctions. VFW Post 6477 then attempts to argue its case for leniency to this Court, claiming that a less drastic punishment should have been imposed in light of evidence that its officers had changed and that VFW Post 6477 contributes to several charities from its bingo proceeds.

The severity of discipline to be imposed rests in the discretion of the MGC. § 313.052. An administrative agency's decision as to discipline will be "upheld unless its determination is: unsupported by competent and substantial evidence; arbitrary, capricious or unreasonable; an abuse of discretion; or unauthorized by the law." *KV Pharm. Co. v. Missouri State Bd. of Pharmacy*, 43 S.W.3d 306, 310 (Mo. banc 2001). "Discretion is abused when the ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Edwards v. Missouri State Bd. of Chiropractic Exam'rs*, 85 S.W.3d 10, 23 (Mo.App. W.D.2002).

Evidence that VFW Post 6477 had a change in leadership and that it contributed to charitable organizations does not, in and of itself, establish an abuse of discretion on the part of the MGC, nor does it indicate that the discipline imposed was arbitrary, capricious or unreasonable. While VFW Post 6477 claims that these factors were not considered by the MGC, it fails to point to anything in the record supporting that claim. To the contrary, the Findings of Fact, Conclusions of Law and Recommendation of Discipline issued by the hearing officer for the MGC clearly reflect that these things were taken into consideration in recommending revocation to the MGC as the appropriate level of discipline. That Recommendation of Discipline contained specific findings related to the change in leadership at VFW Post 6477 and its charitable giving and indicated that revocation was recommended despite those things because VFW Post 6477 was a repeat offender and because a mone-

---

4. "[A] claim that the repeated insertion of a coin or many coins into a machine to watch objects, numbers or cards appear at random in display windows, each operation complet-ed in five seconds or less, could be 'amusing' to even a grade school boy stretches one's imagination." *Id.* at 38 n. 12.

tary penalty, license suspension, and probation had not worked in the past.

 Nothing in the record reflects that the MGC abused its discretion in revoking the bingo license or that revocation was arbitrary, capricious, or unreasonable. To the extent that VFW Post 6477 attempts to reargue the merits of its claims for leniency to this Court, such efforts are improper. The appropriate administrative agency "is better equipped than the courts to determine the gravity of the infraction and the appropriate sanction." *Johnson v. Missouri Bd. of Nursing Adm'rs*, 130 S.W.3d 619, 643 (Mo.App. W.D.2004); *see also KV Pharm. Co.*, 43 S.W.3d at 310. Point denied.

The judgment is affirmed.

All concur.